UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC,<br><br>    Plaintiff,<br><br>    - against -<br><br>CHERYL TYLER,<br><br>    Defendant. | No. _____<br><br>**COMPLAINT** |

Plaintiff WFCM 2016-LC25 West Bay Area Boulevard, LLC ("Lender") files this suit against Defendant Cheryl Tyler ("Tyler"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover on an irrevocable, unconditional, and absolute Guaranty (as defined below) that Tyler executed to secure an $8.35 million loan for Kornbluth Texas, LLC ("Borrower"). Borrower has defaulted on its obligations under the Loan Agreements (as defined below), Tyler's liability has been triggered under the Guaranty, and Lender is now entitled to proceed directly and without notice against Tyler to make good on her obligations under the Guaranty.

2. Notably, the Guaranty is already before the court in another action in this district. On July 30, 2021, Lender filed suit in this district to recover under the Guaranty from Tyler's co-guarantor, William Kornbluth. *See WFCM 2016-LC25 West Bay Area Boulevard, LLC v. William Kornbluth*, No. 21-cv-6479 (Broderick, J.). At that time, Tyler was still managing Borrower, which had filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas (the "Chapter 11 Case"). But on September 30, 2021, the bankruptcy court presiding over the Chapter 11 Case ordered that Tyler would no

longer have the "right to manage the Debtor" or the Debtor's property. *In re Kornbluth Texas, LLC*, No. 21-32261, Dkt. 85, ¶ 15 (Bankr. S.D. Tex. Sept. 30, 2021). Now that Tyler has been removed as Borrower's manager, Lender brings this action to ensure it obtains complete relief under the Guaranty.

## PARTIES

3. Lender is a Delaware limited liability company. Lender's sole member is Wilmington Trust, N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-LC25, Commercial Mortgage Pass-through Certificates, Series 2016, LC25. Wilmington Trust, N.A.'s main office is in Delaware, and therefore Lender's sole member is a Delaware citizen.

4. Tyler is a natural person domiciled in Texas.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction of Tyler, and venue is proper in this district, pursuant to Section 4.9(b) of the Guaranty, in which Tyler agreed that "ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY SHALL AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK," and further agreed to "WAIVE[] ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GUARANTOR HEREBY IRREVOCABLY

SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING."

## BACKGROUND

### The Loan And The Loan Documents

7.  Rialto Mortgage Finance, LLC ("Original Lender") is a subsidiary of Rialto Management Group, LLC, an integrated investment management and asset management platform, which maintains offices in New York County.

8.  Borrower executed a Promissory Note dated October 21, 2016 (the "Note"), payable to Original Lender (Lender's predecessor-in-interest), whereby Original Lender loaned Borrower $8.35 million at an interest rate of 5.00% per annum (the "Loan"). In connection with this transaction, Borrower and Original Lender entered into a Loan Agreement dated as of October 21, 2016 (the "Loan Agreement"). True and correct copies of the Note and Loan Agreement are attached hereto as **Exhibits A and B**, respectively.

9.  In consideration for making the Loan, Borrower granted Original Lender, among other things, pursuant to that certain Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated as of October 21, 2016 (the "Deed of Trust"), a security interest in certain real property and related improvements described in the Deed of Trust, commonly known as Holiday Inn Webster and located at 302 West Bay Area Boulevard, Webster, Texas 77598 (the "Real Estate"), and all fixtures and personal property used or usable in connection with the Real Estate, including, but not limited to, all personal property described in the Deed of Trust and other Loan Documents (as defined below), and all leases and rents, condemnation awards, insurance proceeds, tax refunds, rebates or credits, conversion proceeds, rights, agreements, intangibles, accounts, causes of action, accounts receivables, and other rights (collectively, the "Collateral," and together with the Real Estate, "the "Property").

10. In further consideration for making the Loan, Borrower irrevocably assigned to Original Lender all of its rights in and to all current and future leases and rents on the Property. This assignment is evidenced by the Assignment of Leases and Rent dated October 21, 2016 (the "ALR").

11. The Note, Loan Agreement, Guaranty (as defined below), Deed of Trust, ALR, and all other documents and instruments securing and/or evidencing the Loan, as the same may have been amended, increased, renewed, extended, spread, consolidated, severed, restated or otherwise modified from time to time, are collectively referred to as the "Loan Documents."

12. Subsequent to origination of the Loan, Original Lender, through a series of assignments, transferred and assigned its interest in the Loan Documents to Lender.

13. Pursuant to Article 1 of the Note, Borrower is obligated to pay to Lender all amounts due under the Loan Agreement at the times specified in the Loan Agreement.

14. Section 2.2.2 of the Loan Agreement obligates Debtor to make specified payments on the Loan on the sixth calendar day of each month ("Payment Date").

15. Section 7.1 of the Loan Agreement sets forth events that constitute an "Event of Default," including, among others:

    a. "(i) if any portion of the Debt is not paid on or before the date same is due and payable," with Section 1.1.1 of the Loan Agreement defining "Debt" to mean "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon and all other sums payable to Lender in respect of the Loan under the Note, this Agreement, the Security Instrument or any other Loan Document";

b. "(ii) if any of the Taxes or Other Charges is not paid prior to the date the same becomes delinquent";

c. "(iv) if any breach of any provision of … Section 4.1.12 or Section 8.5," with Section 4.1.12 providing that "(a) Without the prior consent of Lender, neither Borrower nor any Restricted Party shall do any of the following … sell, transfer, convey, assign, mortgage, pledge, encumber, alienate, grant a Lien on, grant any option with respect to or grant any other interest in the Property," and Section 8.5 providing that "Until the Debt has been paid in full, Borrower hereby represents, warrants and covenants that since its formation it has always been and shall continue to be a Single Purpose Entity";

d. "(viii) if the Property becomes subject to any Lien other than a lien for local real estate taxes and assessments not then delinquent and such Lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) days after Borrower has first received notice thereof)"; and

e. "(xvi) if Borrower shall continue to be in default under any other term, covenant or condition of this Agreement, the Note, the Security Instrument or the other Loan Documents not specified above for more than (y) ten (10) days after written notice from Lender, in the cause of any default which can be cured by the payment of a sum of money, or (z) thirty (30) days after written notice from Lender, in the case of any other default."

5

16.   Further, as a condition of the Loan Agreement, Borrower was obligated pursuant to Section 4.1.5 of the Loan Agreement to "give prompt notice to Lender of any litigation or governmental proceedings pending or threatened in writing against the Property, Borrower, or any Guarantor which, if adversely determined, is reasonably likely to have a Material Adverse Effect," as such term is defined in the Loan Agreement.

### The Guaranty

17.   Original Lender was unwilling to make the Loan to Borrower absent an unconditional guarantee provided by Tyler and her co-guarantor, Kornbluth.  Thus, in connection with the Loan, Tyler and Kornbluth executed a Guaranty of Recourse Obligations, dated as of October 21, 2016 ("Guaranty").  A true and correct copy of the Guaranty is attached hereto as **Exhibit C**.

18.   To induce Original Lender to make the Loan to Borrower, Tyler in Section 1.1(a) of the Guaranty "irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise."  Tyler also "irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor."  (Guaranty § 1.1(a).)

19.   Tyler further agreed that the Guaranty was:

> a guaranty of payment and not of collection and upon any default of Borrower under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.  (Guaranty § 1.9.)

20. Section 1.9 of the Guaranty defines "Guaranteed Obligations" to mean "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 8.6 of the Loan Agreement."

21. Section 8.6 of the Loan Agreement provides that the Borrower shall be personally liable on the Debt—which is defined as "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon and all other sums payable to Lender in respect of the Loan under the Note, this Agreement, the Security Instrument or any other Loan Document"—upon the occurrence of enumerated events, including:

> a. "Borrower fails to obtain Lender's prior consent to any Transfer except to the extent expressly permitted by this Agreement;" or
>
> b. "Borrower files a voluntary petition under the Bankruptcy Law."

(Loan Agreement § 8.6(B)(3) and (4).)

22. Tyler agreed to a broad waiver of defenses to induce Original Lender to make the Loan.

23. In Section 1.2 of the Guaranty, Tyler agreed that:

> this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Loan Agreement, the Security Instrument, or the other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

24. In Section 1.6 of the Guaranty, Tyler "waive[d] notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, nonperformance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor." Nonetheless, Lender provided Guarantor informational notices of the demand letters sent to Borrower.

25. In Section 1.10 of the Guaranty, Tyler agreed:

7

> The Guaranteed Obligations and the liabilities and obligations of the Guarantor to Lender hereunder shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower or Guarantor against Lender, or any other party, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

26. Tyler also agreed in Section 1.4 of the Guaranty that:

> with or without notice or demand, Guarantor will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all reasonable out-of-pocket expenses (including counsel fees) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty.

27. Tyler also agreed in Section 4.6 of the Guaranty that he:

> WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THE LOAN AGREEMENT, THE SECURITY INSTRUMENT, THIS GUARANTY OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.

28. The obligations of Tyler under the Guaranty are "joint and several" with her co-guarantor, Kornbluth. (Guaranty § 4.4.) The rights of the Original Lender under the Guaranty also inured to any successors and assigns, such as Lender. (*See id.* § 4.1)

**The Defaults**

29. Borrower has defaulted on its obligations under the Loan Documents.

30. Specifically, among other things, Borrower has failed to make, in full, its Monthly Debt Service Payment Amount (as defined in the Loan Documents) since December 2020.

31. Without Lender's consent or knowledge, Borrower caused a UCC Financing Statement to be filed evidencing other indebtedness and the pledging and/or granting of liens against certain assets of Borrower to a purportedly secured party (U.S. Small Business

Administration) other than Lender (the "UCC Financing Statement").  Filing of the UCC Financing Statement constitutes an unauthorized "Transfer" under Section 4.1.12(a) of the Loan Agreement.

32. On or about April 23, 2021, Lender (through counsel) delivered to Borrower a demand for payment and notice of intent to accelerate (the "Notice of Default").  The Notice of Default iterated Borrower's defaults.  Nonetheless, Guarantor was copied on the Notice of Default.

33. The Notice of Default also included a statement indicating to Borrower that "[u]nless all Current Defaults [as defined therein] are fully cured on or before 12:00 Noon, Dallas, Texas time on Friday, May 14, 2021" (the "Cure Period"), Lender "will accelerate the maturity of the Note and declare the unpaid principal balance, accrued and unpaid interest and all other amounts payable under the Loan Documents immediately due and payable in their entirety."

34. Despite the Notice of Default, Borrower remains in default on its obligations under the Loan Documents, and has no intention of ever paying the amount due Lender under the Loan Documents or curing its other defaults.

35. On or about June 7, 2021, Lender (through counsel) delivered to Borrower a notice of acceleration of debt (the "Notice of Acceleration").  Guarantor was copied on the Notice of Acceleration.  The Notice of Acceleration, among other things, notified Borrower of certain current defaults and that Lender had accelerated the maturity of the Note pursuant to its rights under the Loan Documents.

36. As of July 1, 2021, the Guarantied Obligations (as defined in the Loan Agreement) totaled **$9,529,015.95**.  This amount continues to be due and owing, with interest continuing to accrue.

37. On July 5, 2021, Borrower initiated the Chapter 11 Case.

38. Pursuant to the terms of the Guaranty, Lender may proceed directly against Tyler to collect and recover the full amount of the Guarantied Obligations.

## CAUSE OF ACTION – BREACH OF GUARANTY

39. Plaintiff repeats and realleges all prior paragraphs as if fully set forth herein.

40. Tyler and Original Lender entered into the Guaranty in connection with Original Lender's provision of the Loan to Borrower.

41. The rights of Original Lender under the Guaranty and other Loan Documents have been assigned to Lender, as Original Lender's successor-in-interest.

42. Under the terms of the Guaranty, Tyler "irrevocably and unconditionally guarantee[d] to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise." (Guaranty § 1.1(a).) Also under the terms of the Guaranty, Tyler "irrevocably and unconditionally covenant[ed] and agree[d] that it is liable for the Guaranteed Obligations as a primary obligor." (*Id.*)

43. Pursuant to the definition of "Guaranteed Obligations" in Section 1.1(a) of the Guaranty, Borrower has become personally liable for the full amount of the Debt pursuant to Section 8.6 of the Loan Agreement because, among other things:

    a. Without Lender's consent, Borrower caused a UCC Financing Statement to be filed evidencing other indebtedness and the pledging and/or granting of liens against certain assets of Borrower to a purportedly secured party (U.S. Small Business Administration) other than Lender, which is an unauthorized "Transfer" under Section 4.1.12(a) of the Loan Agreement; and

      b.      Borrower "file[d] a voluntary petition under the Bankruptcy Law" on July 5, 2021.

These actions by Borrower make the Debt "fully recourse to the Borrower" pursuant to Section 8.6(B)(3) and (4) of the Loan Agreement.

44.      The Guaranteed Obligations are presently due and payable.

45.      Tyler has not paid the Guaranteed Obligations as required by the Guaranty.

46.      Tyler's failure to pay the Guaranteed Obligations is a breach of the Guaranty that has damaged Lender in the amount of **$9,529,015.95**, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant and respectfully requests the following relief:

      a.      Plaintiff's actual damages of $9,529,015.95;

      b.      Pre- and post-judgment interest to the maximum extent permitted by law;

      c.      Plaintiff's reasonable out-of-pocket expenses (including counsel fees) incurred by it in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty; and

      d.      Such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
October 29, 2021

/s/ *Debbie E. Green*
Guyon H. Knight
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
gknight@mwe.com

Debbie E. Green
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Telephone: (469) 715-4979
dgreen@mwe.com

*Attorneys for Plaintiff WFCM 2016-LC25 West Bay Area Boulevard, LLC*