UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WFCM 2016-LC25 WEST BAY AREA BOULEVARD, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CHERYL TYLER, <br><br> Defendant. | No. 21-cv-8865 <br><br> (Broderick, J.) |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

McDermott Will & Emery LLP

Guyon H. Knight
One Vanderbilt Ave.
New York, New York 10017

Debbie E. Green
2501 North Harwood St., Ste. 1900
Dallas, Texas 75201

*Attorneys for Plaintiff*
*WFCM 2016-LC25 West Bay Area*
*Boulevard, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................2

    A.    The Loan Documents .................................................................................2

    B.    Borrower Defaulted On The Loan, And Lender Seeks Recovery
        From Tyler Under The Guaranty ...............................................................4

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT ...............................................................................................................................6

I.     Lender Is Entitled To Enforce The Guaranty ......................................................6

II.    Tyler Has No Defenses To Enforcement Of The Guaranty..................................9

III.   Lender Should Be Awarded Its Principal, Interest, Other Sums Payable Under The Loan
      Agreement, And Attorneys' Fees ......................................................................11

CONCLUSION...........................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Coughlin*,
    64 F.3d 77 (2d Cir. 1995)........................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................6, 9

*Burchfield v. Prosperity Bank*,
    408 S.W.3d 542 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ...................10, 11

*Chahadeh v. Jacinto Med. Grp., P.A.*,
    519 S.W.3d 242 (Tex. App.—Houston [1st Dist.] 2017, no pet.) .......................7, 8

*Cimontubo - Tubagens E Soldadura, LDA v. Petroleos De Venezuela, S.A.*,
    No. 20-cv-5382, 2021 WL 827133 (S.D.N.Y. Mar. 4, 2021).................................12

*Cox v. Lerman*,
    949 S.W.2d 527 (Tex. App.—Houston [14th Dist.] 1997, no writ) .........................8

*CSFB1998-C2 TX Facilities, LLC v. Rector*,
    No. 3:14-cv-4142, 2016 WL 631923 (N.D. Tex. Feb. 16, 2016) ...........................10

*EMA Fin., LLC v. Joey New York, Inc.*,
    No. 17-CV-9706, 2019 WL 4600863 (S.D.N.Y. Sept. 22, 2019).............................6

*Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset*
    *Mgmt., L.L.C.*, 595 F. App'x 306 (5th Cir. 2014) ...............................................10

*ICBC (London) PLC v. Blacksands Pac. Grp. Inc.*,
    662 F. App'x 19 (2d Cir. 2016) .............................................................................5

*In re Kornbluth Texas, LLC*,
    No. 21-32261 (Bankr. S.D. Tex.).............................................................................4

*Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*,
    400 F. Supp. 3d 7 (S.D.N.Y. 2019) ....................................................................5, 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).................................................................................................6

*Moayedi v. Interstate 35/Chisam Rd., L.P.*,
    438 S.W.3d 1 (Tex. 2014)................................................................................6, 7, 10

*Orr v. Broussard*,
   565 S.W.3d 415 (Tex. App.—Houston [14th Dist.] 2018, no pet.) .........................................11

*Pac. Premier Bank v. Dragonite Inc.*,
   No. 20-cv-0784, 2021 WL 1192333 (N.D. Tex. Mar. 30, 2021) ...................................... 10-11

*People's Cap. & Leasing Corp. v. Munoz*,
   No. 3:08-CV-1026, 2009 WL 4251111 (N.D. Tex. Nov. 30, 2009) ......................................12

*People's Cap. & Leasing, Corp. v. Weir Bros.*,
   No. 3:12-CV-0290, 2013 WL 12100733 (N.D. Tex. May 30, 2013) .....................................12

*Stouffer v. Levine & Father Operating Corp.*,
   2020 WL 3410636 (Tex. App.—Dallas June 22, 2020, no pet.) ...............................................7

*Torin Assocs., Inc. v. Perez*,
   No. 15 Civ. 8043, 2016 WL 6662271 (S.D.N.Y. Nov. 10, 2016) .............................................5

*U.S. Commodity Futures Trading Comm'n v. Byrnes*,
   No. 13-CV-1174, 2019 WL 4515209 (S.D.N.Y. Sept. 19, 2019)..............................................6

*Valley Nat'l Bank v. Oxygen Unlimited, LLC*,
   No. 10 Civ. 5815, 2010 WL 5422508 (S.D.N.Y. Dec. 23, 2010)..............................................5

*Vasquez v. Victor's Cafe 52nd St., Inc.*,
   No. 18-CV-10844, 2019 WL 4688698 (S.D.N.Y. Sept. 26, 2019)............................................5

**Rules**

FED. R. CIV. P. 56...............................................................................................................1, 5

FED. R. CIV. P. 56(a) ................................................................................................................5

FED. R. CIV. P. 56(b) ................................................................................................................5

**Other Authorities**

1 Civil Practice in the Southern District of New York § 11:21 (2021 ed.)....................................5

Plaintiff WFCM 2016-LC25 West Bay Area Boulevard, LLC ("Lender") respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment against Defendant Cheryl Tyler pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This is a straightforward case.  Lender is the holder of an "irrevocabl[e] and unconditional[]" guaranty (Ex. 7 ("Guaranty") § 1.1(a))[1] executed by Tyler and her co-guarantor, William Kornbluth, in connection with an $8.35 million loan ("Loan") made to Kornbluth Texas, LLC ("Borrower").  Under the terms of the Guaranty, Lender can proceed directly against Tyler to collect the amounts owed "upon any default of Borrower."  Guaranty § 1.9.  Tyler has no defenses to enforcement of the Guaranty, as she has waived "any existing or future right of offset, claim or defense of Borrower or Guarantor against Lender, or any other party, or against payment of the Guaranteed Obligations."  *Id.* § 1.10.

Lender has now come to collect under Tyler's unconditional Guaranty.  Borrower has breached its obligations under the Note (Ex. 1) and Loan Agreement (Ex. 2), failing to make a single mortgage payment since December 2020.  Borrower has also breached its obligations by encumbering property it previously used to secure the Loan and by filing a voluntary petition for bankruptcy—both actions the Loan Agreement expressly prohibits.  *See* Loan Agreement § 8.6(B)(3), (4).  As a result, Lender is now entitled to collect from Tyler the full amount of principal, interest, and fees owed by Borrower, and to collect attorneys' fees "incurred by Lender in connection with the collection of the Guaranteed Obligations."  Guaranty § 1.4.

---

[1] Citations to "Ex. __" refer to exhibits to the Declaration of Scott Fishkind, filed concurrently herewith.

Courts in this district routinely grant pre-discovery motions for summary judgment to enforce unconditional guaranties just like this one under circumstances just like these. This Court should do the same here and grant judgment in favor of Lender.

## FACTUAL BACKGROUND

### A.      The Loan Documents

On October 21, 2016, Rialto Mortgage Finance, LLC ("Original Lender") loaned $8.35 million to Borrower, a single-purpose entity whose only significant asset is a Holiday Inn hotel located in Webster, Texas. 56.1 ¶¶ 1-2. Under the terms of the Note and Loan Agreement executed in connection with the Loan, the Loan accrued simple interest at a rate of 5.00% per annum, and would mature on November 6, 2026. *Id.* ¶ 4; *see* Loan Agreement §§ 2.2.1, 2.2.3; *id.* § 1.1.1, at 2-3. Borrower agreed to make monthly payments until the Loan matured and a final lump sum payment on maturity. Loan Agreement §§ 2.2.2, 2.2.3.

To secure the Loan, Borrower granted Original Lender a security interest in (among other things) its land, all "equipment" and "inventory" on the land, "[a]ll accounts," and "all other general intangibles relating to or used in connection with the operation of the Property." Ex. 3 ("Deed of Trust") § 1.1(a), (e), (m), (n). Original Lender agreed that it would proceed against this security—and not against Borrower—in the event that it needed to enforce the Note, Loan Agreement, and other related documents (together, the "Loan Documents"). *See* Loan Agreement § 8.6. However, the amounts owed under the Loan Documents would become "fully recourse to Borrower in the event that" one of nine specified events occurred. *Id.* § 8.6(B). One of these triggering events was if Borrower encumbered the property it used to secure the loan without prior permission of Original Lender (defined as a "Transfer" under the Loan Agreement). *See id.* §§ 8.6(B)(3), 4.1.12. Another triggering event was if "Borrower files a voluntary petition under the Bankruptcy Law." *Id.* § 8.6(B)(4).

2

In addition to the property securing the Loan, Original Lender was "not willing to make the Loan, or otherwise extend credit, to Borrower" without an "unconditional[] guarant[y] [of] payment and performance" from Tyler and her co-guarantor, Kornbluth. Guaranty at 1. Tyler and Kornbluth therefore jointly and severally "irrevocably and unconditionally guarantee[d] to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise." *Id.* § 1.1(a); *see id.* § 4.4. The "Guaranteed Obligations" were defined as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Section 8.6 of the Loan Agreement"—that is, the amounts that would be fully recourse to Borrower if one of the triggering events occurred. *Id.* § 1.1(a); *see* Loan Agreement § 8.6(B).

The Guaranty gives broad rights of enforcement to Original Lender and its assigns. The holder of the Guaranty can proceed against Tyler and is not required to first collect from Borrower, the secured property, or Kornbluth. Guaranty § 1.9; *see id.* § 4.4. Tyler waived her right to contest "the validity, regularity or enforceability of the Note, the Loan Agreement, the Security Instrument, or the other Loan Documents." *Id.* § 1.2. Tyler waived "any existing or future right of offset, claim or defense of Borrower or Guarantor against Lender, or any other party, or against payment of the Guaranteed Obligations." *Id.* § 1.10. Tyler "waive[d] notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, nonperformance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor." *Id.* § 1.6. And Tyler agreed to pay attorneys' fees "incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty." *Id.* § 1.4.

**B.     Borrower Defaulted On The Loan, And Lender Seeks Recovery From Tyler Under The Guaranty**

Borrower made timely payments as required by the Loan Documents for more than three years.  56.1 ¶ 13.  But beginning in April 2020, Borrower began missing monthly payments and incurring late fees.  *Id.* ¶ 14; *see* Loan Agreement § 2.2.4.  Since December 4, 2020, Borrower has not made any payments of principal, interest, or fees owed under the Loan Documents.  56.1 ¶ 15. Borrower has also breached the Loan Documents in other ways.  For instance, on July 9, 2020, a UCC Financing Statement was filed showing that Borrower had granted a security interest to the U.S. Small Business Administration covering "[a]ll tangible and intangible personal property."  *Id.* ¶ 16.  This filing means that another party now has a security interest in property that was used by Borrower to secure the Loan.  *Id.* ¶ 17.

On April 23, 2021, Lender's predecessor-in-interest sent a letter to Borrower, putting it on notice of these defaults under the Loan Documents and demanding that Borrower cure them.  *Id.* ¶ 18.  The letter also advised Borrower that if these defaults were not cured by May 14, 2021, the maturity of the Note would be accelerated.  *Id.*  Borrower did not respond to this letter, so on June 7, 2021, Lender's predecessor sent another letter to Borrower that "accelerated the Note's maturity and . . . declare[d] the entire indebtedness evidenced by the Loan Documents immediately due and payable."  *Id.* ¶¶ 19-20.  Borrower still has not paid the amounts owed under the Loan Documents. *Id.* ¶ 21.

On July 5, 2021, Borrower breached the Loan Agreement again by filing a voluntary petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of Texas.  *Id.* ¶ 22; *see generally In re Kornbluth Texas, LLC*, No. 21-32261 (Bankr. S.D. Tex.).  This filing, along with Borrower's earlier encumbrance of property that had been used to

secure the Loan, made the amounts owed under the Loan Documents fully recourse to Borrower. *See* Loan Agreement § 8.6(B).

On October 29, 2021, Lender (which has been assigned Original Lender's interest in the Loan Documents (56.1 ¶ 12)) demanded that Tyler perform her obligations under the Guaranty by filing this action. Dkt. 1. To date, neither Tyler nor Kornbluth has paid any part of the Guaranteed Obligations owed under the Guaranty. 56.1 ¶ 25.

## STANDARD OF REVIEW

A motion for summary judgment can be filed "at any time until 30 days after the close of all discovery," "even simultaneously with filing a complaint." FED. R. CIV. P. 56(b); 1 Civil Practice in the Southern District of New York § 11:21 (2021 ed.). Thus, "[i]n appropriate circumstances, summary judgment may be granted prior to discovery." *Vasquez v. Victor's Cafe 52nd St., Inc.*, No. 18-CV-10844, 2019 WL 4688698, at *2 (S.D.N.Y. Sept. 26, 2019) (Broderick, J.) (internal quotation marks omitted). Enforcing an unambiguous loan guaranty is one such circumstance, and courts in this district routinely grant these kinds of pre-discovery motions for summary judgment under Rule 56. *See, e.g., ICBC (London) PLC v. Blacksands Pac. Grp. Inc.*, 662 F. App'x 19, 22 (2d Cir. 2016) (affirming grant of pre-discovery summary judgment to enforce loan guaranty); *Torin Assocs., Inc. v. Perez*, No. 15 Civ. 8043, 2016 WL 6662271, at *9 (S.D.N.Y. Nov. 10, 2016) (granting pre-discovery summary judgment to enforce loan guaranty); *Valley Nat'l Bank v. Oxygen Unlimited, LLC*, No. 10 Civ. 5815, 2010 WL 5422508, at *2-4 (S.D.N.Y. Dec. 23, 2010) (same).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and 'factual disputes that are irrelevant or unnecessary will not be counted.'" *Mason Tenders Dist.*

*Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 13 (S.D.N.Y. 2019) (Broderick, J.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (alteration omitted).  "[T]he dispute about a material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  "In considering a summary judgment motion, the Court must 'view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.'" *U.S. Commodity Futures Trading Comm'n v. Byrnes*, No. 13-CV-1174, 2019 WL 4515209, at *4 (S.D.N.Y. Sept. 19, 2019) (Broderick, J.) (quoting *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995)).

"[T]he moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial,' and to present such evidence that would allow a jury to find in his favor." *EMA Fin., LLC v. Joey New York, Inc.*, No. 17-CV-9706, 2019 WL 4600863, at *3 (S.D.N.Y. Sept. 22, 2019) (Broderick, J.) (quoting *Anderson*, 477 U.S. at 256).  "To defeat a summary judgment motion, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Mason Tenders*, 400 F. Supp. 3d at 13 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## ARGUMENT

### I. LENDER IS ENTITLED TO ENFORCE THE GUARANTY

Under Texas law, which governs the Guaranty and other Loan Documents (*e.g.*, Guaranty § 4.9(a); Loan Agreement § 9.3(a)), "[c]ourts construe unambiguous guaranty agreements as any other contract." *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014).  "In construing a written contract, [the court's] primary objective is to ascertain the parties' true

6

intentions as expressed in the language they chose." *Stouffer v. Levine & Father Operating Corp.*, 2020 WL 3410636, at \*2 (Tex. App.—Dallas June 22, 2020, no pet.).  Where the guaranty is unambiguous, its interpretation "is a question of law for the court." *Moayedi*, 438 S.W.3d at 7.

To recover on a guaranty, the party seeking enforcement must establish four elements: "(1) the existence and ownership of a guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform by the guarantor." *Chahadeh v. Jacinto Med. Grp., P.A.*, 519 S.W.3d 242, 249 (Tex. App.—Houston [1st Dist.] 2017, no pet.).  Here, there is no genuine issue of material fact (or any other kind of fact) as to these elements.

1.    The Guaranty exists and is owned by Lender, who acquired it through a series of assignments, as the express terms of the Guaranty permit.  56.1 ¶ 12; *see* Guaranty § 4.1.

2.    The terms of the underlying contract—i.e., the Note, Loan Agreement, and other Loan Documents—are clearly set forth in those documents.  56.1 ¶ 11.

3.    The two conditions on which liability is based have occurred.

First, the Guaranty expressly states that Lender can trigger the Guaranty "upon *any default of Borrower* under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents."  Guaranty § 1.9 (emphasis added).  There are no other conditions precedent to enforcement, because the Guaranty is, by its own terms, "a guaranty of payment and not of collection" and Lender can enforce the Guaranty "at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person…."  *Id.*  This term comports with Texas law, which recognizes that enforcement of a "guaranty of payment (or unconditional guaranty)" "requires no condition precedent to its enforcement against the guarantor other than a default by

the principal debtor." *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Chahadeh*, 519 S.W.3d at 246-47.

There is no dispute that Borrower defaulted under the Note and Loan Agreement. Borrower has not made any payments of principal or interest since December 4, 2020, in breach of its obligation under Section 2.2.2 of the Loan Agreement.  56.1 ¶ 15.  On April 23, 2021, Lender's predecessor-in-interest gave notice of these and other defaults to Borrower.  *Id.* ¶ 18. And on June 7, 2021, Lender accelerated the amounts owed under the Loan, as the Loan Agreement permits.  *Id.* ¶ 20.  Borrower has not paid any of these outstanding sums, and these defaults allow Lender to proceed directly against Tyler.  *Id.* ¶ 21; *see* Guaranty § 1.9.

Second, at least two events have triggered the "Guaranteed Obligations" that Tyler agreed to pay, as Borrower has become "personally liable" for its debt "pursuant to Section 8.6 of the Loan Agreement."  Guaranty § 1.1(a).  On July 5, 2021, "Borrower file[d] a voluntary petition under the Bankruptcy Law," which by itself is enough to trigger the Guaranteed Obligations.  Loan Agreement § 8.6(B)(4); 56.1 ¶¶ 22-23.  And on July 9, 2020, a UCC Financing Statement was filed, showing that Borrower had granted a security interest to the U.S. Small Business Administration for property that was previously pledged to secure the Loan.  56.1 ¶¶ 16-17.  This filing constitutes a prohibited "Transfer" under the Loan Agreement, which is defined to include "mortgage, pledge, encumber, [or] grant a Lien on" the property that Borrower used to secure the Loan.  Loan Agreement § 4.1.12(a).  There is no doubt the encumbered property overlaps—the Deed of Trust granted to Original Lender encumbers (among other things) Borrower's land, all "equipment" and "inventory" on the land, "[a]ll accounts," and "all other general intangibles relating to or used in connection with the operation of the Property."  Deed of Trust § 1.1(a), (e),

(m), (n).  The security interest granted to the U.S. Small Business Association covers this same

property, specifically:

> All tangible and intangible personal properly, including, but not limited to (a) inventory, (b) equipment, … (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, … [and] (j) general intangibles, including payment intangibles and software….

56.1 ¶ 16.  Borrower's encumbrance of this property made the debt fully recourse to Borrower

under Section 8.6 of the Loan Agreement.

4.       Tyler has not performed her obligations under the Guaranty, as she has not paid the

Guarantied Amounts, which remain fully outstanding.  56.1 ¶ 25.

In sum, Lender has established all necessary elements of a breach of guaranty action, and

it is entitled to enforce the Guaranty directly against Tyler.

## II.       TYLER HAS NO DEFENSES TO ENFORCEMENT OF THE GUARANTY

Because Lender has carried its initial burden to show no genuine dispute of material fact

exists, the burden shifts to Tyler to come forward with specific facts that could present a genuine

issue for trial.  *See, e.g.*, *Anderson*, 477 U.S. at 256.  The plain language of the Guaranty shows

that no such facts can exist because Tyler has waived any defense she might have to enforcement.

Tyler agreed that the Guaranty was "irrevocabl[e] and unconditional[]."  Guaranty § 1.1(a).

Tyler agreed that her obligations were "absolute under any and all circumstances, without regard

to the validity, regularity or enforceability of the Note, the Loan Agreement, the Security

Instrument, or the other Loan Documents."  *Id.* § 1.2.  Tyler "waive[d] notice of the acceptance

hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-

payment, nonperformance or non-observance, or other proof, or notice or demand, whereby to

charge Guarantor therefor."  *Id.* § 1.6.  And Tyler agreed that:

> The Guaranteed Obligations and the liabilities and obligations of the Guarantor to Lender hereunder *shall not be reduced, discharged or released* because of or by

reason of ***any*** *existing or future right of offset, claim or defense* of Borrower or Guarantor against Lender, or any other party, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

*Id.* § 1.10 (emphases added).

Texas law strictly enforces these kinds of broad waivers of defenses in guaranties.  The Texas Supreme Court has confirmed that "the plain meaning of 'any'" in a similar provision "results in a broad waiver of all possible defenses" to enforcement of a guaranty.  *Moayedi*, 438 S.W.3d at 8.  The breath of this waiver "does not mean that it is unclear or vague.  To waive all possible defenses seems to very clearly indicate what defenses are included: all of them."  *Id.* Indeed, following *Moayedi*, the Fifth Circuit has enforced a waiver almost identical to Section 1.10 of the Guaranty.  *See Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 595 F. App'x 306, 309-10 (5th Cir. 2014); *see also CSFB1998-C2 TX Facilities, LLC v. Rector*, No. 3:14-cv-4142, 2016 WL 631923, at *4-5 (N.D. Tex. Feb. 16, 2016) (also enforcing materially identical waiver).  As a result of these clear provisions in the Guaranty, there are no facts or defenses that could present an issue for trial.

Tyler may argue that Lender's pending action against her co-guarantor, Kornbluth, presents an issue that defeats summary judgment.  Not so.  The Guaranty makes clear that "[i]f Guarantor consists of more than one Person, the obligations of each such Person or party shall be joint and several."  Guaranty § 4.4.  There is no requirement that Lender proceed against Tyler and Kornbluth in the same action.  *See Burchfield v. Prosperity Bank*, 408 S.W.3d 542, 546-48 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (rejecting argument that lender was precluded from suing guarantor after previously obtaining judgment against co-guarantor).  Indeed, "[u]nder Texas law, the holder of a note may obtain a judgment against a guarantor of the note 'for the unsatisfied amount of the deficiency regardless of any uncollected judgments against any other guarantor.'"

10

*Pac. Premier Bank v. Dragonite Inc.*, No. 20-cv-0784, 2021 WL 1192333, at *4 (N.D. Tex. Mar. 30, 2021) (quoting *Burchfield*, 408 S.W.3d at 548).   Tyler or Kornbluth can take up any issues concerning the proper allocation of their obligations in a contribution action between themselves. *See, e.g.*, *Orr v. Broussard*, 565 S.W.3d 415, 420 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("[A] co-obligor who discharges more than his share of the common obligation may seek equitable contribution from his co-obligors.").

### III.   LENDER SHOULD BE AWARDED ITS PRINCIPAL, INTEREST, OTHER SUMS PAYABLE UNDER THE LOAN AGREEMENT, AND ATTORNEYS' FEES

For the reasons set forth above, Lender is entitled to recover from Tyler the "Guaranteed Obligations" (Guaranty § 1.1(a)), meaning the "Debt" that has become "fully recourse to Borrower" (Loan Agreement § 8.6(B)).   The Loan Agreement defines "Debt" to mean "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon and all other sums payable to Lender in respect of the Loan under the Note, this Agreement, the Security Instrument or any other Loan Document." *Id.* § 1.1.1, at 11.   The following are the amounts Lender is entitled to recover from Tyler.

**Outstanding Principal Balance.**   The "Outstanding Principal Balance" simply means "as of any date, the outstanding principal balance of the Loan." *Id.* § 1.1.1, at 20.   Based on the payments Borrower made before defaulting, the remaining outstanding principal totals $7,843,946.10.  56.1 ¶ 26.

**Interest.**   Under the Loan Agreement, simple interest accrues on the outstanding principal at the rate of 5.00% per year (based on a 360-day year). *See* Loan Agreement § 1.1.1, at 2; *id.* § 2.2.1.   Once Borrower defaulted on the Loan Agreement, an additional 5.00% of annual interest began to accrue on both the outstanding principal and outstanding interest. *See id.* § 1.1.1, at 11;

*id.* § 2.2.1.  As of July 1, 2021, the amount of outstanding interest due is $521,881.57.  56.1 ¶ 27.

These amounts will continue to increase until the Debt is paid off.

**All other sums payable to Lender.**  Numerous other costs and fees are owed under the

terms of the Loan Agreement.  Tyler owes a prepayment penalty (Loan Agreement § 2.3.3),

defined as the present value of all future scheduled payments minus the outstanding principal

amount (*id.* § 1.1.1, at 24), which, as of July 1, 2021, totals $1,554,986.89 (56.1 ¶ 28).  Tyler also

owes late fees of 5% of each of Borrower's missed payment (Loan Agreement § 2.2.4), which, as

of July 1, 2021, total $36,734.40 (56.1 ¶ 29).

**Attorneys' fees.**  Finally, in addition to the amounts owed pursuant to the Loan Agreement,

Tyler agreed that she "will reimburse Lender, to the extent that such reimbursement is not made

by Borrower, for all reasonable out-of-pocket expenses (including counsel fees) incurred by

Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or

with the enforcement of this Guaranty."  Guaranty § 1.4.  Texas courts regularly award fees

pursuant to such provisions.  *See People's Cap. & Leasing, Corp. v. Weir Bros.*, No. 3:12-CV-

0290, 2013 WL 12100733, at *2 (N.D. Tex. May 30, 2013) (awarding attorneys' fees under similar

provision); *People's Cap. & Leasing Corp. v. Munoz*, No. 3:08-CV-1026, 2009 WL 4251111, at

*6-7 (N.D. Tex. Nov. 30, 2009) (same).  Lender therefore respectfully requests that the Court hold

an inquest (or refer this matter to a magistrate judge for an inquest) to determine the amount of

fees owed by Tyler.  *See Cimontubo - Tubagens E Soldadura, LDA v. Petroleos De Venezuela,*

*S.A.*, No. 20-cv-5382, 2021 WL 827133, at *6-7 (S.D.N.Y. Mar. 4, 2021) (awarding summary

judgment on guaranty and referring matter to magistrate judge for "inquest on attorneys' fees,

costs, and interest").

12

## CONCLUSION

For these reasons, Lender respectfully requests that this Court grant summary judgment and award Lender its outstanding principal of $7,843,946.10, interest of at least $521,881.57, costs and fees of at least $1,591,721.29, and attorneys' fees.

Dated:   November 5, 2021

/s/ Debbie E. Green

Guyon H. Knight
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Tel.: (212) 547-5400
gknight@mwe.com

Debbie E. Green
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel.: (469) 715-4979
dgreen@mwe.com

*Attorneys for Plaintiff*
*WFCM 2016-LC25 West Bay Area*
*Boulevard, LLC*